UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA MARIE MULLINS,

     Plaintiff,                    Civil Action No. 17-12180

         v.                    District Judge ARTHUR J. TARNOW
                              Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
                                 /

## **REPORT AND RECOMMENDATION**

Plaintiff ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #17] be GRANTED to the extent that the case is remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment [Docket #22] be DENIED.

-1-

## I. PROCEDURAL HISTORY

On December 15, 2014,  Plaintiff applied for DIB, alleging disability as of March 1, 2013 (Tr. 136).   Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on May 4, 2016 in Detroit, Michigan (Tr. 33).   Lauren G. Burstein, Administrative Law Judge ("ALJ") presided.   Plaintiff, represented by attorney Randall Phillips, testified (Tr. 38-57), as did Vocational Expert ("VE") Elizabeth Pasikowski (Tr. 57-61).   On May 27, 2016, ALJ Burstein found Plaintiff not disabled from the alleged onset of disability date of March 1, 2013 through Plaintiff's "date last insured" for DIB of March 31, 2014 (Tr. 27-28).   On May 8, 2017, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on July 5, 2017.

## II. BACKGROUND FACTS

Plaintiff, born November 8, 1968, was 47 when ALJ Burstein issued her decision (Tr. 28, 136).   She completed high school and worked until January, 2009 (Tr. 165).   She alleges disability as a result of heart disease, diabetes, thyroid problems, depression, glaucoma, and hypertension (Tr. 164).

### A.  Plaintiff's Testimony

*Plaintiff stated that she understood that she would be required to show that she became disabled before March 31, 2014 for an award of DIB* (Tr. 36).

She then offered the following testimony.

-2-

Plaintiff testified that during the relevant period, she lived in a ground floor apartment (Tr. 39). She lived with her husband who was disabled as a result of a stroke (Tr. 39-40). Plaintiff's step-son helped take of her husband (Tr. 40). In addition to a high school diploma, Plaintiff took some college courses but did have additional degrees or certificates (Tr. 40). She and her husband lived on her husband's disability income and pension (Tr. 40-41). She received health insurance through her husband's former employer (Tr. 41).

Plaintiff stopped working in 2009 due to depression and a "mental break down" (Tr. 42). Before ceasing work, she worked at a logistics company as an import specialist (Tr. 42). Her job allowed her to sit most of the day and did not require significant lifting (Tr. 42). She formerly performed the same position for two other companies (Tr. 43). She was unable to work due to shortness of breath; wrist and back pain; anxiety and depression; and the inability to sit or stand for long periods (Tr. 43). She began experiencing the physical problems in March, 2013 after the implantation of a cardiac stent (Tr. 43). Her physical problems had remained the same since March, 2013 but the mental conditions had become a "little worse" (Tr. 44). Plaintiff was unable to sit for more than 25 minutes or stand for 10 and was unable to walk more than 50 feet due to back problems and shortness of breath (Tr. 44). She was unable to lift even five pounds (Tr. 45). She had not been diagnosed with Carpal Tunnel Syndrome ("CTS") but experienced CTS-type wrist pain (Tr. 45).

On a typical day, Plaintiff showered, took her medications with a cup of tea, performed some household chores, then sat in a reclining chair and watched television (Tr. 45). She seldom used a computer and did not read or have hobbies (Tr. 46). At the time of the hearing, she attended psychological therapy and saw a psychiatrist once every three months (Tr. 46). She took medication for the psychological conditions as well as pain medication, and medication for cardiac, diabetes, and thyroid conditions (Tr. 47). She did not experience medication side effects other than dry mouth (Tr. 48). She did not experience problems with self care activities or driving short distances (Tr. 48). She relied on her daughter to drive on longer trips and to prepare meals (Tr. 49). Her daughter had done the grocery shopping for the past three or four years (Tr. 49). Plaintiff's household chores were limited to tidying the bed, putting dishes in the sink, and wiping the counters (Tr. 49). She experienced interrupted sleep and took daytime naps three to four times a week (Tr. 50). She did not use alcohol or recreational drugs (Tr. 51).

In response to questioning by her attorney, Plaintiff stated that she would be unable to perform a job with a "sit/stand" option for eight hours a day because she was unable to sit and stand for a combined total of eight hours each day (Tr. 51). She was unable to stand in one place for significant periods due to back pain (Tr. 52). She reported that she had experienced the physical limitations as far back as March, 2014 (Tr. 52). She also experienced daily shortness of breath and had chest pains four to five times a week lasting up to 20 minutes (Tr. 52-53). She experienced gripping limitations and would be unable

to perform a job requiring the use of a keyboard for even two hours a day or repetitive fingering (Tr. 53). She experienced pain while buttoning her pants and in overhead reaching (Tr. 53-54). She experienced level "six to seven" pain on a scale of one to ten on a typical basis (Tr. 55). Her most comfortable position was lying in a recliner with her feet elevated to heart level (Tr. 55). She spent four to five hours reclining every day (Tr. 55). She also experienced memory and concentrational problems (Tr. 55). She lost focus after watching television for even five minutes (Tr. 56). She experienced panic attacks characterized by shortness of breath and sweatiness twice a day (Tr. 56). As a result of depression, she did not socialize (Tr. 56). She lacked the motivation to get out of her pajamas two to three days each week (Tr. 56). A short period before the hearing, Plaintiff had undergone a stress test and another cardiac catheterization (Tr. 56). She noted that a recent MRI showed abnormalities of the lumbar spine (Tr. 57).

### B.    Medical Evidence

#### 1.  Treating Sources[1]

Records from March, 2006 to October, 2008 show that Plaintiff was treated for depression and anxiety (Tr. 620). May, 2006 records note that she was cooperative with clear speech and full orientation (Tr. 617). September, 2012 emergency testing performed due to reports of chest pain showed no evidence of a myocardial infarction (Tr. 334, 375, 394, 419).

---

[1]Records from before and after the relevant period of March 1, 2013 to March 31, 2014 are included for background purposes.

Plaintiff reported the conditions of anxiety and depression (Tr. 373). The following month, she was diagnosed with mild gastritis (Tr. 365, 407, 488). Imaging studies of the abdomen were unremarkable (Tr. 502). In January, 2013, Plaintiff sought emergency treatment for hypertension (Tr. 318). Imaging studies of the lumbar spine from the same month showed minimal degenerative changes at L3-L4 but were otherwise negative (Tr. 500).

On March 5, 2013, Plaintiff underwent a cardiac catheterization with stent implantation after undergoing a stress test showing a left bundle-branch block (Tr. 243). In September, 2013, Plaintiff reported lower back pain (Tr. 441). November, 2013 imaging studies of the hips and pelvis were unremarkable (Tr. 496). An MRI of the brain from the following month was unremarkable (Tr. 495).

April 11, 2014 blood work showed that Plaintiff's blood sugar levels were "way up" (Tr. 461). In October, 2014, Plaintiff underwent a second cardiac catheterization (Tr. 504). Surgical records show that Plaintiff experienced complications at the site of the first stent (Tr. 504). Treating notes by Susan Jurasek, M.D. from the same month note Plaintiff's report of fatigue (Tr. 549). Dr. Jurasek's December, 2014 record note Plaintiff's report of hip pain and right foot numbness (Tr. 556).

April, 2015 treating records by George Nahhas, M.D. note Plaintiff's report of shortness of breath (Tr. 527). May, 2015 records by Pawan K. Garg, M.D. note the presence of diabetes and heart disease (Tr. 547). Plaintiff underwent another catheterization in June, 2015 after a stress test the previous month showed abnormal results (Tr. 531, 539, 542-543).

Dr. Nahhas' July, 2015 records note good results from the June, 2015 procedure (Tr. 533). Records by Aleman A. Khoury, M.D. from the same month note the presence of "severe coronary artery disease" (Tr. 519). Dr. Jurasek's July, 2015 records note that the gastric pain had resolved (Tr. 566). Plaintiff expressed an interest in weight loss surgery (Tr. 571). October, 2015 records note that Plaintiff had not followed through with cardiac rehabilitation (Tr. 536). A stress test was called off due to shortness of breath (Tr. 605). Dr. Nahhas' March, 2016 records note Plaintiff's report of chest pain and intermittent shortness of breath (Tr. 609, 628). In April, 2016, Dr. Garg found that Plaintiff was unable to meet competitive standards in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 621-622). He found that Plaintiff was unable to meet competitive standards in any work-related area and would be off task over 20 percent of the workday due to depression, a panic disorder, and coronary disease (Tr. 622-625).

### 2. Non-Treating Sources

In March, 2015, Rom Kriauciunas, Ph.D. found "insufficient evidence" of a psychological disorder for the relevant period (Tr. 77).

### C.  Vocational Expert Testimony

VE Elizabeth Pasikowski classified Plaintiff's past relevant work as an import specialist as skilled and sedentary[2] (Tr. 57).  ALJ Burstein then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, work experience:

> [Assume that this individual is limited to light work, can climb ramps and stairs occasionally, can never climb ladders, ropes and scaffolds, can stoop and balance occasionally, can kneel, crouch and crawl frequently, should only have occasional exposure to pulmonary irritants and extreme temperatures, should avoid hazards such as unprotected heights and moving mechanical parts.  This person's also limited to simple, routine work, must be in a low stress work environment, which means simple – only simple work-related decisions and little to no change in the workplace, occasional interaction with the general public or occasional contact with the general public and no tandem tasks.  Can this individual perform any claimant's past work? (Tr. 58).

The VE testified that the above limitations would preclude Plaintiff's past work or jobs using transferable skills from the former work but would allow for the exertionally light, unskilled work of an information clerk (64,000 positions in the national economy); sorter (51,000); and inspector (82,000) (Tr. 59).  The VE testified further that if the above limitations were amended to limit the individual to *sedentary* work with a sit/stand option,

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

limited to occasional kneeling, crouching, and crawling and only occasional superficial contact with the public and coworkers, the individual could work as an sedentary order clerk (81,000); inspector (72,000); and sorter (59,000) (Tr. 59).  The VE stated that if the above-described individual were also limited to occasional handling, fingering, and reaching, the individual would be unable to perform any sedentary work (Tr. 60).

In response to questioning by Plaintiff's counsel, the VE testified that the need to be away from the work station for up to 20 minutes each hour, the need to be off task for at least 15 percent of the day, take two absences a month, or, the need to recline with the feet at waist level on an occasional basis would be work preclusive (Tr. 60-61).

### D.  The ALJ's Decision

Citing the medical records, ALJ Burstein that between March 1, 2013 and March 31, 2014, Plaintiff experienced the severe impairments of "coronary artery disease, a left bundle branch block, degenerative arthritis [of the] lumbar spine, diabetes, obesity, restless leg syndrome, depression, and anxiety" but that none of the conditions met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22).  She found that the conditions of hypertension, hypothyroidism, hyperlipidemia, and elevated liver enzymes were non-severe (Tr. 22).  While the Dr.  Kriauciunas found no evidence of psychological limitation for the relevant period, the ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 23-24, 77).

For the period between March 1, 2013 and March 31, 2014, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following additional limitations:

> [Requires] a sit-stand option where she could sit for 30 minutes at a time and stand and/or walk for 10 minutes at a time. She could not climb ladders, ropes, or scaffold, but could occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps. She could have occasional exposure to pulmonary irritants, but could not be exposed to hazards such as unprotected heights or moving mechanical parts. She was limited to simple, routine work, in a low-stress work environment, which is characterized by only simple work-related decisions and little or no changes in the work setting. she could not do tandem tasks, and could have occasionally superficial contact with co-workers and the general public (Tr. 24).

Citing the VE's testimony, the ALJ found that Plaintiff could work as a sedentary order clerk, inspector, and sorter (Tr. 28, 59).

The ALJ discounted the allegations of psychological disability for the relevant period, noting that Plaintiff had not established long-term mental health treatment (Tr. 26). The ALJ cited Dr. Kriauciunas' non-examining determination of "insufficient" medical evidence to evaluate Plaintiff's conditions for the relevant period (Tr. 26). The ALJ accorded "very little weight" to Dr. Garg's opinion that Plaintiff was unable to meet competitive standards in any area of psychological functioning, noting that he did not begin treating Plaintiff until over one year after the expiration of entitlement to DIB (Tr. 26). The ALJ noted that despite her finding that Plaintiff was limited to sedentary work, the medical record failed to show "very limiting impairments during the relevant period" (Tr. 26).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984)

## V.  ANALYSIS

### A.  The ALJ's Step Three Findings

In her first argument, Plaintiff disputes the Step Three finding that the condition of

coronary artery disease ("CAD") did not equal a listed impairment.  *Plaintiff's Brief,* 15-20

(*citing* Tr. 23),  *Docket #17*, Pg ID 702.   She contends that the Step Three finding that she

did not medically equal an impairment listed in 20 C.F.R.  Part 404, Subpart P, Appendix 1

is unsupported by a medical opinion as required by SSR 96–6p, 1996 WL 374180, *3 (July

2, 1996).  Plaintiff argues, in effect, that her cardiac condition during the relevant period met

or equaled Listing 4.04C which requires in relevant part a threshold showing of "[i]schemic

heart disease, with symptoms due to myocardial ischemic . . . while on a regimen of

-12-

prescribed treatment, and with (C) "Coronary artery disease, demonstrated by angiography showing (1) significant arterial blockage,[3] and (2) "[r]esulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living."

In response, Defendant argues that "no reasonable fact finder" could find that the condition of CAD met or medically equaled any of the listings pertaining to cardiac-related conditions found in Listings 4.01 to 4.12. *Defendant's Brief,* 8-13, *Docket #22,* Pg ID 749. Defendant contends that the ALJ's finding that Plaintiff "did not have 'very serious limitations' in activities of daily living" forecloses the possibility of meeting Listing 4.04. *Id.* at 11 (*citing* Tr. 23).

Defendant argues primarily that Plaintiff does not meet any listed impairment. However, a distinction exists between the Step Three finding that a claimant does not *meet* a listed impairment and the finding that she did not *medically equal* a listed impairment.   In contrast to the former, an equivalency finding must be supported by opinion evidence. Defendant's contention that the ALJ did not err in finding that Plaintiff did not *meet* any of the listings pertaining to cardiac impairment is peripheral to Plaintiff's argument that the finding that she did not medically equal a listed impairment must be supported with a medical opinion.

---

[3]*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04C(1)(a-e).

The current transcript does not contain an equivalency finding by a medical expert. "[W]hile an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings." *Stratton v. Astrue,* 987 F.Supp. 2d 135, 148 (D.N.H. 2012)(citing SSR 96-6p, 1996 at *3)("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight"). "This is presumably because making an equivalency finding requires difficult medical judgments as to the severity of a claimant's ailments, judgments that are greatly assisted by consulting an expert." *Stratton,* at 148.[4]

---

[4]

In March, 2015, a Single Decision Maker ("SDM"), Terri Gillies found "little to no" evidence supporting a finding of disability, determining, in effect that Plaintiff did not meet or medically equal a listed impairment. However, "RFC forms completed by SDMs" do not constitute "'opinion evidence'" *Id.* (citing Programs Operations Manual System ("POMS") DI § 24510.05)). "'[U]nder the regulations and agency policy, SDM assessments have no place in an ALJ's disability determination.'" *Id.* (citing *White v. Comm'r of Soc. Sec.,* 2013 WL 4414727, *8 (E.D.Mich. Aug.14, 2013)). Dr. Kriauciunas' March, 2015 opinion that Plaintiff's psychological conditions did not medically equal a listed impairment does not address the physical conditions. Opinion evidence regarding equivalency of the psychiatric conditions does not remedy the lack of opinion evidence regarding the physical conditions. *See Trainor v. Commissioner of Social Sec.,* 2014 WL 988993, *24 (E.D.Mich. March 13, 2014)(Berg, J.)(physician's signature on the Determination Transmittal Form and analysis of psychiatric evidence did not cure his failure to consider equivalency regarding the physical impairments).

Defendant contends that the failure to procure a medical opinion is harmless error given the lack of evidence supporting an equivalency determination. *Defendant's Brief* at 8 (*citing Rabbers v. CSS*, 582 F.3d 647, 655–658 (6th Cir. 2009)).   However, the facts in this case point to the need for an equivalency opinion.   First, at Step Two, the ALJ found that Plaintiff experienced the severe impairment of CAD  (Tr. 22).   At a minimum, the Step Two finding implies potential work-related limitations caused by this condition.   While Defendant contends that the condition was not disabling, the presence of physical limitations at Step Two required that the ALJ continue his analysis at Step Three.

Further, the medical transcript shows that the condition of CAD required aggressive and repeated treatment.   Plaintiff underwent a cardiac catheterization in March, 2013 (Tr. 243) and a second procedure in October, 2014  (Tr. 504).   Surgical records suggest that the October, 2014 procedure was required, in part, to followup or correct the March, 2013 surgery (Tr. 504).   To be sure, Plaintiff's October, 2014 condition postdates the expiration of benefits by almost four months.   Nonetheless, the records suggesting *ongoing* problems resulting from CAD could support a finding of disability prior to March 31, 2014.   While in some cases, a finding of harmless error is appropriate, "courts generally should exercise caution" in finding that the omission of a key portion of the administrative analysis is harmless. *Rabbers, supra*, 582 F.3d at 657–58.   Given the facts of this case, the absence of any medical opinion stating that the condition of CAD did not medically equal a listed impairment constitutes grounds for remand.

### B.  Plaintiff's Other Arguments for Remand

Although remand is appropriate based on the absence of a medical opinion on the

issue of equivalency, the Plaintiff's other arguments, standing alone, do not provide grounds

for remand.  However, the Court allows that upon remand, the ALJ may revisit the RFC,

credibility determination, or Step Five job findings based on the findings of the medical

expert appointed to made a finding on the issue of equivalency.

### 1.  The RFC

Plaintiff argues that RFC crafted by the ALJ is not supported by the medical evidence.

*Plaintiff's Brief* at 20.

Plaintiff's argument is not well taken.  First, it is well settled that determination of the

RFC "is expressly reserved for the Commissioner." *Edwards v. Commissioner of Social

Security*, 97 Fed.Appx. 567, 569, 2004 WL 959480, at *1 (May 3, 2004);  20 C.F.R. §§

404.1527(e)(2).  Further, my own review of the record and the ALJ's opinion shows that

while the evidence for the relevant period did not strongly support the allegations of

disability, the ALJ credited Plaintiff's unsupported claims of limitation in crafting the RFC.

Finally, contrary to Plaintiff's contention, the RFC is well supported and explained.

The ALJ accurately noted that the medical record as a whole "[did] not establish very

limiting impairments during the relevant period" (Tr. 26).  While the evidence as a whole

weakly supported Plaintiff's allegations of disability, the RFC reflects fairly stringent

psychological and physical limitations.  For example, while the ALJ cited Dr. Kriauciunas'

-16-

March, 2015  finding that none of the evidence for the relevant period supported a finding of psychological limitation (Tr. 26), the RFC nonetheless contains a restriction to "simple, routine work, in a low-stress work environment," with "only simple work-related decisions," "little or no changes in the work setting," the inability to perform tandem tasks, and only "occasional superficial contact with co-workers and the general public" (Tr. 24).

As to Plaintiff's physical limitations, the ALJ accurately noted that while the medical transcript did not support a finding of "very limiting impairments," the sedentary RFC was "based largely on [Plaintiff's] testimony" (Tr. 26).  She noted elsewhere that the imaging studies of the lumbar spine showing essentially unremarkable findings and that neurological findings as of March, 2014 were negative (Tr. 25).  If anything, the RFC composed by the ALJ reflects a generous account of Plaintiff's limitations for the relevant period.

## 2.  The Credibility Determination

Plaintiff contends that the ALJ "failed to consider" her testimony that her daily activities were compromised by physical and mental problems.  *Plaintiff's Brief* at 23. Plaintiff disputes the rejection of her allegations of disability on the basis that she could do "some cleaning," shop, and drive (Tr. 25).  She notes that on a questionnaire completed before the hearing, Plaintiff report that she cleaned slowly and relied on her daughter to do the laundry and help her shop (Tr. 155-156).

However, the ALJ provided an adequate rationale for rejecting Plaintiff's professed level of impairment, citing lumbar spine studies showing no significant abnormalities and

negative musculoskeletal and neurological findings (Tr. 25).  The ALJ noted that despite a

diagnosis of diabetes, the medical evidence did not show the presence of either peripheral

neuropathy or retinopathy (Tr. 26).  Despite the diagnosis of CAD, the ALJ noted a good

ejection fraction and the absence of edema or a heart murmur (Tr. 26).  The ALJ's credibility

determination, consistent with my own review of record is supported by substantial evidence

and should thus remain undisturbed.  *Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007)("an

ALJ's credibility determinations about the claimant are to be given great weight")(*see also*

*Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989))(*citing Imani v. Heckler*, 797 F.2d

508, 512 (7th Cir. 1986))(An ALJ's "credibility determination must stand unless 'patently

wrong in view of the cold record' ").

### 3.  The VE's Job Findings

Finally, Plaintiff argues that the ALJ failed to meet her burden at Step Five to show

the ability to perform a significant range of work.  *Plaintiff's Brief* at 26-28.  She argues that

the hypothetical question to the ALJ did not account for her full degree of exertional and

manipulative limitation, contending that the ALJ erred by failing to acknowledge her

professed inability to stand in one spot for long periods or handle small items.  *Id.* at 26-28.

She also argues that the description of one of the VE's three job findings exceeds the mental

requirements of the RFC.  *Id.* at 28-30.

 Plaintiff is correct that vocational testimony given in response to a question that does

include all of a claimant's relevant limitations does not constitute substantial evidence. *Varley*

*v. Commissioner of HHS*, 820 F.2d 777, 779 (6th Cir. 1987).   Nonetheless, an ALJ is not required to include unsubstantiated allegations in the hypothetical question to the VE. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994)(ALJ not obliged to credit rejected claims in question to VE or corresponding RFC).

The ALJ's omission of certain of the alleged limitations from the hypothetical is well supported by the record.  As discussed above, the imaging studies of the spine do not support Plaintiff's claims of that she was unable to stand in one position for significant periods. None of the records support Plaintiff's claim that she experienced significant manipulative limitations during the relevant period.  As such, the ALJ did not err by omitting the alleged postural and manipulative limitations from the  hypothetical question to the VE or the RFC found in the administrative opinion.

Plaintiff also argues that all three of the job findings by the VE, as described by the *Dictionary of Occupational Titles* ("*DOT*"), exceed the psychological limitations imposed in the hypothetical question. *Plaintiff's Brief* at 29. Plaintiff argues that the job of order clerk "entails dealing with people" and requires "more than superficial occasional contact with co-workers and the public." *Id.*  She claims likewise that the sorter and inspector positions "are production jobs" exceeding the limitation to "simple, routine work in a low-stress work environment" with "only simple work-related decisions" and few or no changes in the work place. *Id.* (*citing* Tr. 58).

The sorter position cited by the VE is restricted to sedentary, unskilled work in which the worker "[o]bserves nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks. Places defective nuts and foreign matter into containers." *See DOT* Listing #521.687-086, Nut Sorter, 1991 WL 674226 (Jan. 1, 2016). Plaintiff does not state how picking non-conforming nuts off a conveyor belt exceeds the psychological limitations included in the hypothetical question. In the inspector position, also sedentary and unskilled, the worker "[i]nspects dowel pins for flaws, such as square ends, knots, or splits, and discards defective dowels." *See DOT* Listing #669.687-014 Dowel Inspector, 1991 WL 686074. While Plaintiff states that the sorter and inspector jobs are "production jobs," and "require repetitive or short-cycle work," she does not explain how a "production" job stands at odds with the limitations found in the hypothetical question.

While the *DOT's* description of the position of order clerk appears to require at least frequent interaction with the public[5] (contrary to the hypothetical limitation to occasional interaction with the public), the fact that one of the three job findings by the VE apparently conflicts with the *DOT* is not fatal to the Step Five findings, given that Plaintiff has failed to show that the VE's finding that the jobs of sorter and inspector (together totaling 131,000 positions in the national economy) conflicts with the information found in *DOT*. Because

---

[5]*See DOT* Listing #209.567-014, Order Clerk, Food and Beverage, 1991 WL 671794 (1991)209.567-014. The worker "[t]akes food and beverage orders over telephone or intercom system and records order on ticket," "[r]ecords order and time received on ticket," "suggests menu items," "answers questions regarding food or service," and passes along order tickets or "calls out order[s] to kitchen employees."

a significant number of position remain when the order clerk job is struck, the  Step Five findings should remain undisturbed.  *See Richards v. Colvin*, 2015 WL 136227, at *8 (S.D.Ohio January 9, 2015)(VE's erroneous testimony as to one job finding harmless error given that the remainder of the job findings did not conflict with the *DOT*).

 Plaintiff also faults the ALJ for failing to ask if the vocational testimony conflicted with the information found in the *DOT*.  *Plaintiff's Brief* at 29.  SSR 00–4p "imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the *DOT*.'" *Lindsley v. Commissioner of Social Sec.*, 560 F.3d 601, 606 (6th Cir.2009)(citing SSR 00–4p, *4).

However, Plaintiff's argument that the ALJ neglected to inquire as to possible conflicts with the *DOT* does not provide grounds for remand.  Although the ALJ did not ask whether the vocational testimony conflicted with the information found in the *DOT,* the VE anticipated the question by noting that the vocational testimony regarding the "sit/stand option, missing time, off tasks, absent from the work station and elevating the legs" was not based on the *DOT* but rather, the VE's own experience (Tr. 61).   Given that the VE volunteered (unprompted) the  discrepancies between the *DOT* and her testimony, the ALJ's inquiry as to conflicts with the *DOT* would have been redundant.  Moreover,  the VE provided *DOT* codes for all of the job findings as well as for Plaintiff's former job prior to listing the portions of her testimony which were not based on the *DOT*(Tr. 57, 59).  The fact that one of three of the VE's job findings possibly conflict with the *DOT* does not invalidate

-21-

the other two job findings or the ultimate Step Five determination.  "Nothing in SSR 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Lindsley* at 606 (*citing Martin v. Comm'r of Soc. Sec.,* 170 Fed.Appx. 369, 374 (6th Cir. March 1, 2006)).  Accordingly, the ALJ's reliance on the vocational testimony does not warrant a remand.

Nevertheless, for the reasons set forth in Section **A.**, *above,* a remand is required.  However, because it cannot be said that "all essential factual issues have been resolved," a remand for further fact-finding, rather than an award of benefits, is appropriate. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994).  Upon remand, I recommend that the ALJ procure an equivalency opinion regarding the physical conditions by a medical expert.

## VI.  CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Docket #17] be GRANTED to the extent that the case is remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment [Docket #22] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 24, 2018                              s/R. Steven Whalen
                                                  R. STEVEN WHALEN
                                                  UNITED STATES MAGISTRATE JUDGE

---

## CERTIFICATE OF SERVICE

I hereby certify on July 24, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 24, 2018.

                                                  s/Carolyn M. Ciesla
                                                  Case Manager for the
                                                  Honorable R. Steven Whalen